IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MORGAN JOHNSON,

     Plaintiff,

v.                                                      No. 03-2307

CITY OF MEMPHIS, W.E. CREWS,
in his personal and official capacity as Director
of the Memphis Police Department, OFFICER
FRANCIS CHERRY, in his personal and official
capacity as a police officer of the Memphis
Police Department, OFFICER MICHAEL ENGLAND
 in his personal and official capacity as a police officer
of the Memphis Police Department, OFFICER PICKERING,
in his personal and official capacity as a police officer
of the Memphis Police Department, and ANY OTHER
UNNAMED OFFICERS OF THE MEMPHIS POLICE
DEPARTMENT, in their personal and official capacities,

     Defendants.
_____

ORDER GRANTING THE DEFENDANT CITY OF MEMPHIS'S MOTION FOR SUMMARY
JUDGMENT AND DISMISSING ALL CLAIMS AGAINST THE CITY OF MEMPHIS
_____

     Plaintiff Morgan Johnson brought the instant action against the City of Memphis, W.E.

Crews, Officer Francis Cherry, Officer Michael England, Officer Pickering, and other unnamed

officers of the Memphis Police Department, asserting claims under 42 U.S.C. §§ 1981, 1983,

1985, 1986, 1988, and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the

United States Constitution, as well as state law claims of assault and battery brought pursuant to

the Tennessee Governmental Tort Liability Act ("TGTLA").  On September 30, 2006, the Court

dismissed all claims against the City of Memphis, except for the Fourth Amendment excessive

force claim and the state law claims of assault and battery.  Before the Court is the City of

Memphis's motion for summary judgment on these remaining claims. The Plaintiff has responded and this motion is ripe for disposition. For the reasons set forth below, the Defendant's motion for summary judgment is GRANTED.

BACKGROUND

This action arises from an encounter between several Memphis police officers and the Plaintiff that took place at the 2002 Memphis in May festival and resulted in Johnson's arrest. (Am. Compl. ¶¶ 1-19.) According to the Plaintiff, he and his friend, Chad Roaf, and his brother, Marcus Johnson, were walking downtown when he decided to go into an alley to relieve himself. (Id. ¶¶ 1-2.) Three plain-clothes policemen entered the alley and proclaimed to Johnson and the other men in the alley that it was not a public toilet. (Id. ¶ 3; Doc. No. 99 Attach. 16-17, Trial Transcript, at 32.) These officers were later identified as Francis Cherry, Michael England, and Adam Pickering. The Plaintiff testified at his criminal trial that he did not hear the police officers identify themselves, although at least one of the officers testified that they did. (Doc. No. 99 Attach. 16-17, Trial Transcript, at 239-40, 32.) Roaf, who was relieving himself in a different part of the alley, also did not hear the officers identify themselves. (Id. at 200.) Johnson asserted that because he did not hear these individuals say they were police officers, he thought they were just drunks attending the festival and he continued urinating. (Id. at 240.)

Roaf and Johnson both testified that shortly thereafter, the Plaintiff was shoved into a chain-link fence by one of the three police officers. (Id. at 199, 240.) Johnson stated that he then threw his drink to create a diversion so he could escape from the men. (Id. at 241.) Officer Cherry contradicted Johnson's testimony, claiming that the Plaintiff threw the drink in his face and attempted to hit him after he tapped Johnson on the shoulder when he continued to relieve

himself.  (Id. at 45-46.)  Officer England stated that he then pushed Johnson into the fence and advised him that he was under arrest.  (Id. at 83.)

After being shoved into the fence, Johnson testified that the officers began to beat him so severely that he defecated on himself and later counted thirty-seven wounds on his body, including a footmark on his neck.  (Id. at 241, 246-47.)  Roaf corroborated this testimony, stating that he saw "three huge Caucasian males basically jumping [his] friend."  (Id. at 199.)  Roaf also recalled that he never saw Johnson throw any punches while he was being beaten.  (Id. at 206.)  The Plaintiff was subsequently arrested for assaulting an officer and taken to a medical facility for treatment.  (Id. at 245.)  Officer Cherry admitted that he and the other officers used force against the Plaintiff and sprayed him with pepper spray, but claimed it was necessary to subdue him in order to execute the arrest.  (Id. at 14-15.)  Officer England also admitted kicking the Plaintiff in order to get him to comply.  (Doc. No. 99 Ex. L, Hearing Summary Form for Def. England's Hearing on Excessive Force Charge, at 1.)

On May 2, 2003, the Plaintiff filed the instant action against the Defendants.  In light of Johnson's complaint, the Inspectional Services Bureau of the Memphis Police Department ("ISB"), which investigates complaints of officer misconduct, conducted an investigation into the events surrounding Johnson's arrest to determine whether there was a violation of the police department's policies.  (Doc. No. 93, Def.'s Statement of Facts, ¶¶ 12-15.)  The ISB found that Officers Cherry and Pickering were not guilty of any misconduct, but that Officer England used excessive force in arresting the Plaintiff.  (Id. ¶ 15;  Doc. No. 99 Ex. C, Def. England's Resps. to Pl.'s First Set of Interrogatories ¶ 7.)  Officer England was suspended for two days.  (Doc. No.

99 Ex. C, Def. England's Resps. to Pl.'s First Set of Interrogatories, ¶ 7.)   The Plaintiff claims

that Officer England was disciplined too lightly.  (Doc. No. 99, Pl.'s Resp. to Def.'s Facts ¶ 15.)

The Court has dismissed all charges against the City of Memphis except for the Fourth

Amendment excessive force claim and the state law claims of assault and battery brought

pursuant to the TGTLA.  The Defendant argues that the Plaintiff's Fourth Amendment claim

must be dismissed because there is no evidence linking any policy or custom of the City to the

incident that is the basis for the Plaintiff's suit.  The Defendant further contends that the Plaintiff

cannot recover pursuant to the TGTLA because he cannot show that the City failed to exercise

reasonable care to protect him from a foreseeable risk.

STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm

Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion

for summary judgment, the evidence must be viewed in the light most favorable to the

nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When the motion is supported by documentary proof such as depositions and affidavits, the

nonmoving party may not rest on his pleadings but, rather, must present some "specific facts

showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita,

475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the

standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

A.     MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

Local governments such as the City are considered "persons" for purposes of § 1983. Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000). This does not mean, however, that municipalities are "liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978). Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 694). The Sixth Circuit has held that there are four means of proving the existence of a municipality's illegal policy or custom.

> The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted).

In its motion for summary judgment, the City presents sufficient evidence, which the Plaintiff does not challenge, that it has both written policies prohibiting the use of excessive force and disciplinary procedures to punish officers who violate those policies. (Doc. No. 93, Def.'s Statement of Facts ¶¶ 7-14; Doc. No. 99, Pl.'s Resp. to Def.'s Facts ¶¶ 7-10, 12-14 (admitting that the policies and procedures exist, but contending that they are not enforced or are "wanting").) The City argues that the Plaintiff has presented no evidence that indicates that these official policies and procedures are supplanted by an informal policy or custom of violating the civil rights of members of the public. (Doc No. 93, Def.'s Mem. In Supp. Mot. for Summ. J.,

at 10-11.)   In addition, the Defendant contends that it adequately screened, trained, investigated, and disciplined the officers involved in the Plaintiff's arrest.  (<u>Id.</u> at 11.)

In response to the Defendant's motion for summary judgment, Johnson presents two arguments.  First, he maintains that the City's failure to properly investigate the alleged violation of the Plaintiff's civil rights and discipline the officers involved demonstrates a custom of tolerating federal rights violations.  (Doc. No. 98, Pl.'s Mem. in Opp., at 3-5.)  Next, Johnson asserts that the City has a policy of inadequate screening, training and supervision.  (<u>Id.</u> at 5.)  The Court will address each of these arguments in turn.

1.  <u>Whether the City Has a Custom of Tolerating Federal Rights Violations</u>

The Sixth Circuit has held that a municipality's failure to properly investigate constitutional violations committed by its employees and punish the responsible parties can establish municipal liability.  <u>Marchese v. Lucas</u>, 758 F.2d 181, 188-89 (6th Cir. 1985); <u>see also</u> <u>Leach v. Shelby County Sheriff</u>, 891 F.2d 1241, 1247 (6th Cir. 1989) ("The manifestation of this policy here has two aspects: first, the Sheriff failed to supervise his employees adequately when he knew or should have known of the danger that inmates . . . were likely to receive inadequate care and second, *the Sheriff failed to investigate this incident and punish those responsible, in effect ratifying their actions*.") (emphasis added).

Under this theory, the Plaintiff

> must show not only that the investigation was inadequate, but that the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the [City] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [City]'s custom was the cause of the [constitutional violation].

<u>Thomas</u>, 398 F.3d at 433 (citing <u>Doe v. Claiborne City</u>, 103 F.3d 495, 508 (6th Cir. 1996)).  As to the third prong, deliberate indifference "does not mean a collection of sloppy, or even reckless

oversights; it means evidence showing an obvious, deliberate indifference" to alleged constitutional violations.  Doe, 103 F.3d at 508.

"[T]he plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference."  Thomas, 398 F.3d at 433. In Thomas, the Sixth Circuit affirmed the district court's grant of summary judgment in favor of the City of Chattanooga when a police officer shot a man in violation of the City's policies and the City's internal investigation concluded that the shooting was justified.  398 F.3d at 432-34. Although the court noted that the it was debatable whether the internal investigation reached the right conclusion, it held that the shooting and the City's investigation thereof did not establish an illegal policy because the case was an isolated incident.  Id. at 433-34; see also Piotrowski v. City of Houston, 237 F.3d 567, 582 (5th Cir. 2001) (refusing to hold a city liable under § 1983 when the only example of the city's failure to discipline police officers who violated constitutional rights was the case before the court); Daniels v. City of Columbus, No. C2-00-562, 2002 WL 484622, at *6-7 (S.D. Ohio Feb. 20, 2002) (holding that the plaintiff could not establish that the police department had a custom or policy of failing to investigate and discipline constitutional violations when "[the plaintiff's] memorandum in opposition to the motion for summary judgment [was] limited solely to a discussion of how the investigation of her particular complaint was flawed"); cf. Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986) (holding a city liable under § 1983 for excessive use of force by police where city council members were aware of *numerous* instances of prior police brutality and did nothing to rectify the situation).

In this case, the Plaintiff argues that the City's liability is established by 1) its failure to investigate Officer Cherry's actions; 2) the fact that the discipline received by Officer England was too light; 3) the fact that the incident report drafted by Lt. A.C. Knight described Johnson's facial injuries as minor; and 4) the fact that none of the officers were disciplined for "False

Reporting," despite the fact that the jury in the Plaintiff's criminal case did not believe their testimony. Johnson's arguments are unconvincing.

First, although the Plaintiff may be dissatisfied with the results of the investigation into the circumstances surrounding his arrest, the evidence reveals that the ISB inquiry was thorough. Contrary to the Plaintiff's claim, the ISB did look into Officer Cherry's role in Johnson's arrest, but exonerated him. (Doc. No. 93, Def.'s Statement of Facts ¶ 15; Doc. No. 99, Pl.'s Resp. to Def.'s Facts ¶ 15 (admitting same, but stating that "nothing was done to Cherry"); Doc. No. 99 Ex. B, Officer Cherry's Statement to ISB.) As part of that investigation, Officers Cherry, Pickering, and England were interviewed by ISB about the Plaintiff's allegations. (Doc. No. 99 Exs. B, G, H, Officers Cherry's, Pickering's, and England's Statements to ISB.) Furthermore, Officer England appeared at a hearing at which he was allowed to respond to the charges against him and was nonetheless found guilty of using excessive force against the Plaintiff. (Doc. No. 99 Ex. L, Hearing Summary Form I.) Thus, this does not appear to be "a purely formalistic investigation in which little evidence was taken, the file was bare, and the conclusions of the investigator were perfunctory." Piotrowski, 237 F.3d at 582 (finding that an investigation was sufficient when the police department's investigator interviewed the police officers against whom the charges were filed and reviewed relevant police department documents).

The Plaintiff's own evidence also reveals that Officer England was suspended for two days after the ISB determined that he used excessive force in arresting Johnson. (Doc. No. 99 Ex. C, Def. England's Resps. to Pl.'s First Set of Interrogatories ¶ 7.) This punishment falls into the upper range of the disciplinary actions authorized by the City's Disciplinary Matrix, which provides for anything from an oral reprimand to three days' suspension for a first excessive force offense. (Doc. No. 99 Ex. N, Disciplinary Matrix.) The Plaintiff does not argue that the

punishments outlined in the Disciplinary Matrix are lenient in comparison to those doled out by other police departments for similar offenses. He simply insists that England should have been found guilty of the use of "unnecessary force," which carries a heavier penalty than excessive force, because "[o]bviously if he used Excessive Force, it was unnecessary." (Doc. No. 98, Pl.'s Resp. in Opp., at 8.) However, the mere fact that England could have been subjected to harsher punishment for his conduct does not establish that the City's investigation into the matter and its penalty against the officer was inadequate.

Second, the Plaintiff presents no evidence of any incidents, other than his own case, where the City failed to properly investigate and discipline police officers involved in violating the constitutional rights of members of the public. According to the Commander of the ISB, as of the date of Johnson's arrest, Officers England, Cherry and Pickering had no history of being disciplined for engaging in the type of conduct described by the Plaintiff in his Complaint. (Doc. No. 93 Ex. C, Aff. of Glen Williams ¶¶ 9-11.) Johnson presents evidence that England was previously exonerated of a charge that he violated the City's Personal Conduct Rule, which "prohibits any and all conduct that is contrary to the letter and spirit of departmental policy and procedure which would reflect adversely upon the Department or its members." (Doc. No. 99 Ex. K, Officer Card File; Doc. No. 93 Ex. A to Aff. Francis McCann, Memphis Police Department Policy and Procedures, at 1.) However, the facts of this incident are not disclosed. Thus, the Court cannot determine whether the event was in any way similar to the facts surrounding the Plaintiff's arrest and cannot conclude that the City was aware of, but ignored, England's potential for unprovoked violence. The Plaintiff further claims that Cherry was twice disciplined for damaging city property. Again, the fact that Cherry may have damaged city

property would not put the City on notice that he might violate the Plaintiff's constitutional rights by using excessive force against him.

Last, Johnson submits a newspaper article published in 2007, five years after the Plaintiff's arrest, that reports on a claim of excessive force brought against several other Memphis police officers. (Doc. No. 99 Ex. O, Newspaper Article: "Salon Owner Says Officers Too Forceful".) These recent claims, however, cannot have formed part of a pattern of civil rights violations that the City should have been aware of when it began its investigation of the events surrounding the Plaintiff's arrest. Because Johnson's case is not representative of a clear and persistent pattern of illegal activity that the City knew or should have known about and was deliberately indifferent towards, the Court concludes that the Plaintiff has failed to establish that the alleged violation of his constitutional rights by these officers was caused by the City's tolerance of civil rights abuses.[1]

---

[1] As to the Plaintiff's contention that the incident report drafted by Lt. A.C. Knight downplayed Johnson's injuries and thus reflected an effort by Lt. Knight to cover up the officers' actions, the Court disagrees. The report supports the Plaintiff's contention that his injuries were severe, stating that Johnson was "beaten," that he had "multiple abrasions and contusions" and a hemorrhage in his right eye. (Doc. No. 99 Ex. J, Lt. A.C. Knight Report.) The Court also finds that the Plaintiff's argument that the City's deliberate indifference towards constitutional violations of members of the public is established by the fact that the officers were not disciplined for "False Reporting" when the jury in the Plaintiff's criminal case did not believe their testimony, is without merit. The fact that the prosecution was unable to meet their burden of proving the Plaintiff's guilt beyond a reasonable doubt does not show that the City has a policy or custom of tolerating constitutional rights violations.

2.  <u>Whether the City Has a Policy of Inadequate Screening, Training and Supervision</u>

a.      <u>Screening</u>

To establish municipal liability for failure to screen, the Plaintiff must prove that the City's inadequate screening "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." <u>Brown</u>, 520 U.S. at 411. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" <u>Id.</u>

In this case, the Commander of the Police Training Academy of the Memphis Police Department, Francis McCann, Jr., has submitted an affidavit stating that before hiring the three officers in question, the Training Academy conducted background investigations, which consisted of driving and criminal history reviews, as well a personal and employment reference-check.  (Doc. No. 93 Ex. B, Aff. of Francis McCann ¶¶ 1, 8-10.)  In addition, the Training Academy performed a psychological test on the officers.  (<u>Id.</u> ¶¶ 8-10.)  All three officers passed the background check and psychological test.  (<u>Id.</u> ¶ 10.)  The Plaintiff has offered no evidence suggesting that there was anything in the officers' backgrounds that the Defendant knew or should have known that indicated that Cherry, England, or Pickering were in any way unfit to work for the Memphis Police Department.  Thus, Johnson has failed to establish that the City has a policy of inadequate screening.

b.    <u>Training</u>

Inadequacy of police training may serve as a basis for liability under § 1983.  "To establish liability under a failure to train theory, 'the plaintiff must prove: that the training program is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury.'" <u>Berry v. City of Detroit</u>, 25 F.3d 1342, 1346 (6th Cir. 1994) (quoting <u>Hill v. McIntyre</u>, 884 F.2d 271, 275 (6th Cir. 1989).  However, the fact  "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  <u>City of Canton v. New Hampshire</u>, 489 U.S. 378, 390-91 (1989) (citations omitted).  "'[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by city policymakers.'"  <u>Id.</u> at 389 (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-84 (1986)).

The Tennessee Peace Officers Standards and Training Commission ("POST"), which establishes employment and training standards for police officers in Tennessee and approves all police-training curriculum, currently requires that all officers receive a minimum of 400 hours of basic training.  (Doc. No. 93 Ex. B, Aff. of Francis McCann ¶ 13.)  The Defendant's undisputed evidence reveals that from 1998 to 2000, when Cherry, England, and Pickering joined the force, Memphis Police Officers were required by the City to complete 240 hours of training as "Police Service Technicians," followed by 480 hours of Basic Recruit Police Training.  (<u>Id.</u> ¶ 15.) According to McCann, Basic Police Recruit Training "includes courses in constitutional law, search and seizure, civil liability, use of force, proper arrest procedures, and basic life support

13

training, which includes recognition of medical conditions of arrested parties." (Id. ¶ 16.) The Defendant officers each received at least 720 hours of initial training, more than double the amount required by POST in 1998-2000. (Id. ¶¶ 15, 18, 21, 24.) In addition, they had each completed 40 hours of in-service training every year since completing their basic training. (Id. ¶¶ 19, 22, 25.)

In support of his argument that the City has a policy of inadequate training that caused his injury, the Plaintiff contends that 1) the officers were trained to believe that pepper spray is 100% effective on police officers, a fact that Johnson contends "has no baiss (sic) in fact . . . and said custom and trining (sic) allowes (sic) the MPD officers to purport falsehoods at a criminal defendant's trial . . . ." (Doc. No. 98, Pl.'s Mem. in Opp., at 10); 2) the officers were trained to not display their police badges when approaching members of the public in connection with minor violations of the law; 3) Memphis police officers are not made aware of policy changes. For the following reasons, the Court finds that these arguments are without merit.

At the Plaintiff's criminal trial, Officer Cherry testified that he was taught during training that pepper spray is ineffective on 40% of the population and that Johnson did not respond to being sprayed. (Doc. No. 99, Pl.'s Statement of Facts, at 11 ¶ 19.) He also testified that pepper spray is 100% effective on police officers. (Id.) According to the Plaintiff, Cherry's training on this matter has no basis in fact. (Doc. No. 98, Pl.'s Mem. in Opp., at 10.) Johnson, however, presents no proof to rebut Cherry's claims about the efficacy of pepper spray. Further, the Plaintiff does not argue that there is any causal link between this training and the amount of force the officers used in arresting him. If anything, as the Plaintiff concedes, the statistic Cherry allegedly learned in training might have dissuaded him from using pepper spray during

an arrest, given its lack of efficacy on almost half the population. (Id.) As for the Plaintiff's contention that Cherry's training on pepper spray "allowes (sic) the MPD officers to purport falsehoods at a criminal defendant's trial," the Amended Complaint does not allege that the officers' statements at Johnson's trial are part of the basis for his § 1983 suit. (See Am. Compl.)

The Plaintiff argues that "non-identification was a moving force behind the violations at bar." (Doc. No. 98, Pl.'s Resp. in Opp., at 11.) England testified at Johnson's criminal trial that when police officers are in plain-clothes, they should not identify themselves until they are ready to make an arrest or want "to let people know that you are, in fact, the police and you're going to assume the authority of a police officer." (Doc. No. 99 Attach. 16-17, Trial Transcript, at 83.) England did not claim to have learned this procedure during training. (See id.) Whether or not the officers identified themselves before attempting to arrest the Plaintiff may be an unresolved factual issue. However, the Plaintiff has not presented any evidence that the City trained its officers to arrest suspects *without* identifying themselves first. Even if Officer England's opinion can be attributed to the training he received, it does not support such a proposition. He clearly stated that plain-clothes police officers must identify themselves *before* they attempt to arrest anyone. To the extent Johnson contends that plain-clothes officers should identify themselves to all individuals they encounter, regardless of whether they intend to invoke the authority their badges convey to them, the Court finds that such a requirement would defeat the purpose of working in plain-clothes and hamper the police department's ability to conduct investigations of illegal activity.

Last, the Plaintiff argues that the City's failure to train its police officers is reflected by the fact that "officers are not made aware of [Memphis Police Department] policy changes, thus

making their training ineffective." (Doc. No. 98, Pl.'s Mem. in Opp., at 11.) However, because the Plaintiff does not allege any facts that would establish a causal connection between a possibly ignored "policy change" and the events surrounding his arrest, the Court cannot conclude that any inadequacy in the City's method of informing police officers of policy changes "is 'closely related to' or 'actually caused' the plaintiff's injury.'" Berry, 25 F.3d at 1346 (quoting Hill, 884 F.2d at 275). Thus, Johnson has failed to establish that the City had a policy of inadequate training.

c.    Supervision

A municipality may be held liable when its failure to supervise its police officers reflects a policy of deliberate indifference to the arrestee's constitutional rights. See Montgomery v. De Simone, 159 F.3d 120, 126-27 (3d Cir. 1998). "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing Canton, 489 U.S. at 390). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id. (citations omitted).

The Plaintiff argues that the City's failure to supervise is demonstrated by the fact that the City does not inform police officers of every complaint lodged against them. (Doc. No. 98, Pl.'s Resp. in Opp., at 5.) However, Johnson presents no evidence that complaints of similar misconduct were lodged against Cherry, England, and Pickering or any other members of the police department, but that the officers were not informed of the complaints or that they were not investigated by the City. See supra p. 10-11. Thus, the Court cannot conclude that the City was

deliberately indifferent to any other complaints of excessive force. Plaintiff further contends that Cherry, England, and Pickering were too inexperienced to be sent by the City to work in plain-clothes "confronting citizens urinating in public during Memphis in May." (Doc. No. 98, Pl.'s Resp. in Opp., at 11.) In this case, all three Defendants had been working as police officers for the City of Memphis for at least a year and a half, excluding the time spent in training. (Doc. No. 93 Ex. B, Aff. of Francis McCann ¶¶ 18, 21, 24.) Johnson does not explain why the City should have considered them to be too inexperienced to properly investigate public urination charges or how much experience the officers should have had. Therefore, the Plaintiff has failed to show that the City was deliberately indifferent in assigning officers with the level of experience attained by Officers Cherry, England, and Pickering to patrol the Memphis in May festival in plain-clothes.

B.    <u>STATE LAW CLAIMS</u>

With the resolution of Plaintiffs's federal claims, the only remaining causes of action against the City of Memphis fall under Tennessee state law. The acceptance by a district court of supplemental or pendent jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits a court to decline the exercise of jurisdiction when it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Without any remaining federal claims against this Defendant or diversity of citizenship between the parties, the Court declines to exercise jurisdiction over the Plaintiff's state law claims and thus DISMISSES them without prejudice as to the City. <u>See</u> <u>Weeks v. Portage County Executive Offices</u>, 235 F.3d 275, 279-80 (6th Cir. 2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

CONCLUSION

For the reasons set forth herein, the motion of the Defendant for summary judgment as to the federal claims is GRANTED. The remaining state law claims against the City of Memphis are DISMISSED without prejudice.

IT IS SO ORDERED this 8th day of January, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE